After a jury trial, defendant, Patrick Pursley, was found guilty of first-degree murder (720 ILCS 5/9-1(a)(3) (West 1992)). Defendant was sentenced to natural life in prison. On direct appeal, this court affirmed defendant's conviction and sentence. See People v. Pursley,284 Ill. App. 3d 597 (1996). In July 1997, defendant filed a petition for postconviction relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 et seq. (West 1996)). The trial court dismissed defendant's petition as frivolous and without merit and this court affirmed the trial court's dismissal. See People v. Pursley, No. 2-97-0984 (1999) (unpublished order under Supreme Court Rule 23). Thereafter, in March 1999, defendant filed a second postconviction petition, which was also dismissed. This court affirmed the trial court's dismissal of defendant's second petition for postconviction relief. SeePeople v. Pursley, No. 2-00-0551 (2001) (unpublished order under Supreme Court Rule 23).
Defendant now appeals from a judgment by the circuit court denying his motion for ballistics testing pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/116-3 (West 2000)). Specifically, defendant argues that section 116-3 permits ballistics testing under the Integrated Ballistics Identification System (IBIS). We affirm.
The facts relevant to this appeal are as follows. Becky George testified that she had been Andy Ascher's girlfriend. On April 2, 1993, at around 10 p.m., she and Ascher were parked in front of her brother's condominium when a man opened the driver's door where Ascher was sitting. The man pointed a gun at them and asked for money. Becky then heard two "noises that were like pops" and Ascher slouched down.
The police found two cartridge casings outside the vehicle in which Ascher was shot. Also recovered were two bullets, one from the dashboard of the vehicle and the other from beneath Ascher's shoulder. After an anonymous tip, the police searched the apartment shared by defendant and his girlfriend and seized a 9-millimeter Taurus semiautomatic handgun. Defendant was charged with shooting and killing Ascher while committing an armed robbery. *Page 233 
At trial, Daniel Gunnell, a specialist in firearm and tool mark identification for the Illinois State Police, testified for the State. Using the same type of cartridges found at the scene of the crime, Gunnell test-fired two shots with defendant's Taurus handgun. Gunnell then compared his test firings to the recovered cartridges and bullets. Gunnell concluded that the two recovered cartridges had been fired by the Taurus handgun "to the exclusion of all others." With respect to the bullets, Gunnell also concluded that they had been fired by the Taurus gun "to the exclusion of all others."
Mark Boese, an expert in patterned impression evidence employed by Bri-Mar International Laboratories, testified for the defense. After examining the cartridges and bullets from the crime scene, as well as Gunnell's test firings, he test-fired the Taurus gun. Boese concluded that the bullets had probably been fired by a 9-millimeter Taurus gun, but did not conclude that it was the one in evidence. Although Boese could not exclude the recovered Taurus gun as having fired the bullets, he did not feel he had sufficient correspondence of impressions to declare a match.
The jury found defendant guilty of first-degree murder and he was sentenced to natural life in prison. After exhausting all other forms of remedy, defendant filed a pro se motion for forensic testing pursuant to section 116-3 of the Code. Defendant requested, inter alia, that the Taurus handgun, as well as the recovered cartridges and bullets, be subjected to ballistics testing under IBIS.
The State filed a motion to dismiss arguing, inter alia, that section 116-3 does not pertain to ballistics testing. The trial court granted the State's motion to dismiss, finding that (1) defendant's claim was barred by res judicata; (2) section 116-3 pertains to fingerprints and DNA testing but not to ballistics; (3) IBIS is not a new test but a new system for cataloging ballistics information; (4) Gunnell was definite in his ballistics comparison whereas Boese's expert opinion was inconclusive; and (5) application of the IBIS would not produce new, noncumulative evidence. Defendant's appeal timely followed.
On appeal, defendant argues that the court erred in denying his motion for forensic testing pursuant to section 116-3 of the Code. It is defendant's position that section 116-3 applies to ballistics testing and that he has fulfilled the prerequisites of the statute. Defendant contends that, if the two cartridges and bullets from both the crime scene and the Taurus handgun are analyzed under IBIS, the results may demonstrate that his Taurus gun was not the weapon used in the shooting. According to defendant, the computer may not find a match with his gun, or may indicate a match with another Taurus gun.
The State responds that defendant's section 116-3 motion is *Page 234 
barred by res judicata or, in the alternative, that defendant has failed to present a prima facie case that IBIS testing should be allowed. The State also moves to strike two IBIS articles appended to defendant's brief. Arguing that they were not considered by the trial court and are not part of the record, the State objects to defendant's citation to these articles in his brief.
This case hinges upon the proper scope of section 116-3, which provides:
 "Motion for fingerprint or forensic testing not available at trial regarding actual innocence.
 (a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint or forensic DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial. Reasonable notice of the motion shall be served upon the State.
 (b) The defendant must present a prima facie case that:
 (1) identity was the issue in the trial which resulted in his or her conviction; and
 (2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.
 (c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:
 (1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence;
 (2) the testing requested employs a scientific method generally accepted within the relevant scientific community." 725 ILCS 5/116-3 (West 2000).
We review de novo a trial court's ruling on a motion under section 116-3 of the Code. People v. Hockenberry, 316 Ill. App. 3d 752, 755 (2000). This standard is appropriate because the trial court's decision is based upon its assessment of the pleadings and the trial transcripts rather than the credibility of the witnesses. Hockenberry,316 Ill. App. 3d at 755. Thus, the trial court is in no better position than the reviewing court to decide the merits of such a motion.Hockenberry, 316 Ill. App. 3d at 755-56.
As stated previously, the trial court found that section 116-3 applies to fingerprints and DNA testing but not to ballistics testing. Thus, the dispositive issue in this case is whether section 116-3 *Page 235 
pertains to ballistics testing under IBIS. Upon reviewing the plain language of section 116-3, we hold that it is not applicable here.
We believe the language in section 116-3 is clear and unambiguous. While the section is entitled "Motion for fingerprint or forensic testing not available at trial regarding actual innocence," subsection (a) then states that a defendant may make a motion "for the performance of fingerprint or forensic DNA testing." 725 ILCS 5/116-3 (West 2000). Defendant argues that the single reference to "fingerprint or forensic DNA testing" should not limit the application of the statute to those two forms of testing. We disagree.
The cardinal principle of statutory construction is to ascertain and give effect to the intention of the legislature. People v. Savory,197 Ill. 2d 203, 212 (2001). The language used by the legislature is the best indicator of legislative intent, and it must be given its plain and ordinary meaning. Savory, 197 Ill. 2d at 213. When the terms used by the legislature are clear and unambiguous, it is not necessary to resort to other aids of construction. Savory, 197 Ill. 2d at 213.
Our review of the statute reveals an intent by the legislature to restrict the scope of section 116-3 to tests based on "genetic material" such as fingerprints and DNA.
 "When our legislators enacted section 116-3, they intended to provide an avenue for convicted defendants who maintained their innocence to test available genetic material capable of producing new and dramatic evidence materially relevant to the question of innocence. The legislature recognized that advances in scientific technology harbored the potential to correct injustice through the highly reliable use of genetics." (Emphasis added.) People v. Urioste, 316 Ill. App. 3d 307, 310 (2000).
While it is clear that the legislature has provided for fingerprint and forensic DNA testing, we find nothing in the language of the statute to support defendant's assertion that it is intended to encompass all advances in forensic technology and testing. We note that, had the legislature intended to broaden the scope of section 116-3 to include different forms of forensic testing beyond fingerprint and DNA testing, it could have expressly done so. Thus, we hold that section 116-3 pertains only to fingerprint and forensic DNA testing, exactly as it states.
Finally, commentary regarding section 116-3 lends support to this conclusion by noting that additional forensic tests, such as ballistics testing, may eventually be added to the statute.
 "Other forensic tests might someday be added to the Illinois law as the courts and the legislature recognize their reliability. For instance, new computerized technology similar to [the Automated *Page 236 
Fingerprint Identification System (AFIS)] can compare a bullet's characteristics to a range of bullet profiles in a database, matching the gun used in one case to another case and possibly tying the crime for which a person was convicted to another crime committed by someone else." G. O'Reilly, A Second Chance for Justice: Illinois' Post-Trial Forensic Testing Law, 81 Judicature 114, 116 (1997).
Defendant argues in the alternative that, if section 116-3 is found not to apply to other forms of forensic testing, it violates due process and equal protection of the law. Defendant concedes that this claim is subject to a rational basis test. According to defendant, there is no rational reason to treat those who may be exonerated by a new forensic test, such as ballistics testing under IBIS, differently from those who may be exonerated through new DNA or fingerprint tests. In other words, advances in fields such as ballistics should accrue to defendants who have been convicted in the same way as advances in fingerprint and DNA testing.
Statutes carry a very strong presumption that they are constitutional as written, and the party challenging the constitutionality of a statute bears the burden of rebutting this presumption. People v. Kimbrough,163 Ill. 2d 231, 237 (1994). In construing a statute, we have a duty to affirm the statute's validity and constitutionality if reasonably possible. Kimbrough, 163 Ill. 2d at 237. If the statute's construction is doubtful, we must resolve all doubts in favor of the statute's validity.Kimbrough, 163 Ill. 2d at 237.
The constitutional right to equal protection of the law guarantees that the State must treat similarly situated persons in a similar manner.Kimbrough, 163 Ill. 2d at 237. A law that does not implicate either a suspect classification or a fundamental right is subject to the rational basis test. People v. Shephard, 152 Ill. 2d 489, 500 (1992). Under this test, the statute need only be rationally related to a legitimate State goal. Shephard, 152 Ill. 2d at 500. Further, our review under the rational basis standard is limited and generally deferential. Shephard,152 Ill. 2d at 500.
The standards used to determine the constitutionality of a statute under the due process and equal protection clauses are identical.Kimbrough, 163 Ill. 2d at 242. As in the case of equal protection, legislation challenged on due process grounds will be upheld if it is rationally related to a legitimate statutory objective. Kimbrough,163 Ill. 2d at 242. Under the rational basis test, the statute is constitutional if any state of facts can reasonably be conceived to justify the classification. Kimbrough, 163 Ill. 2d at 238.
As previously noted, the purpose of the statutory scheme we *Page 237 
are considering is "to provide an avenue for convicted defendants who maintained their innocence to test available genetic material capable of producing new and dramatic evidence materially relevant to the question of innocence." Urioste, 316 Ill. App. 3d at 310. Balanced with this interest in exonerating innocent persons wrongly convicted is the interest in promoting the finality of criminal judgments. See 81 Judicature 114. Conceivably, the legislature restricted forensic testing to genetic material because the reliability of such tests has been established. This limit ensures that a motion for forensic testing will not be filed alongside every scientific advancement in the years to come. Thus, it cannot be said that section 116-3 is unreasonable or arbitrary simply because it does not provide for other types of forensic testing such as ballistics testing under IBIS.
Without presuming to know why the Illinois legislature chose to limit section 116-3 to fingerprint and forensic DNA testing, we need only conceive of one potential basis for the legislation. People v.McLaughlin, 324 Ill. App. 3d 909, 916. Moreover, "`"[i]t is entirely irrelevant for constitutional purposes whether [our] conceived reason for the challenged distinction,"'" namely, promoting the finality of judgments, "`"actually motivated the legislature." [Citation.]' [Citation.]" McLaughlin, 324 Ill. App. 3d at 915. Accordingly, defendant's argument that section 116-3 violates equal protection and due process must fail.
Because we hold that section 116-3 pertains only to fingerprint and forensic DNA testing, and not to ballistics testing under IBIS, we need not consider whether defendant's motion is barred by res judicata or whether defendant has satisfied all of the requirements of section 116-3. For the same reason, we need not reach a determination regarding the State's motion to strike the IBIS articles appended to defendant's brief.
For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County dismissing defendant's motion for ballistics testing under IBIS pursuant to section 116-3 of the Code.
Affirmed.
 O'MALLEY and CALLUM, JJ., concur. *Page 238