Albert HUDSON, Movant–Appellant

v.

STATE of Missouri, Defendant–Respondent.

No. SD 28808.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 20, 2008.

Albert Hudson, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jamie Pamela Rasmussen, Asst. Atty.

Gen., Jefferson City, for defendant-respondent.

JOHN E. PARRISH, Judge.

Albert Hudson (movant) was convicted of burglary in the first degree, § 569.160, RSMo 1986, and attempt to commit forcible rape, § 566.030, RSMo Cum.Supp. 1993. Movant unsuccessfully sought post-conviction relief pursuant to Rule 29.15. Movant's convictions and the denial of his Rule 29.15 motion were affirmed in *State v. Hudson*, 970 S.W.2d 855 (Mo.App.1998). Movant thereafter requested "DNA testing of hair samples taken in relation to the crime [for which he was convicted]" pursuant to § 547.035, RSMo 2000. His motion was denied without a hearing. Movant appeals that judgment. This court affirms.

Movant filed the hand-written motion that is the subject of this appeal in the Circuit Court of Scott County, Missouri, on July 26, 2007. The motion states:

> Comes now Albert Hudson, movant herein, pro se, and make [sic] application to this court for postconviction remedy to permit movant to obtain DNA testing under civil procedure 547.035 V.A.M.S. to secure relief.
>
> 1. Movant is confined in the Missouri Department of Correction at Potosi Correctional Center, 11593 State Highway O, Mineral Point, Missouri 63660.
>
> 2. Following an [sic] conviction by jury trial of burglary in the first degree § 569.160, RSMO 1994, [sic] and attempt [sic] forcible rape, § 566.030, RSMO 1994, obtain [sic] in the Circuit Court of Scott County movant was sentence [sic] as a prior offender to fifteen years and a consecutive twenty-five years term imprisonment.
>
> 3. Movant now petition [sic] the trial court under Mo.Rev.Stat. § 547.035 and section 547.037 asserting DNA testing of hair samples taken in relation to the crime will demonstrate he is innocent of the crime inwhich [sic] movant was convicted.

Movant's motion includes pages captioned "Factual and Procedural Background." They are followed by an "Allegation of Supporting Facts," which states:

> On the night of movants [sic] arrest February 9, 1994 several itemes [sic] of evidence were secured in relation to the crime only one item is relevant in this case inwhich[sic] requested DNA is sought for testing by movant. One sock cap retrieved from the victim [sic] home states expert Andy Wagoner testified he analyzed the sock cap and performed microscopic comparison of two hairs found in the cap. With hair samples taken from movant he found one of the hairs to be consistent with movant.

The facts that led to movant's conviction are recited at length in *State v. Hudson, supra.* They are not repeated here.

■ Movant has attempted to assert four points relied on in this appeal. He has not, however, set out the points relied on in a single location in his brief. Each point relied on appears only at the beginning of the part of movant's argument directed to the issue attempted to be asserted by that point. As such, movant's brief is not in compliance with Rule 84.04.[1]

---

1. Rule 84.04(e) states that "[t]he point relied on shall be *restated* at the beginning of the section of the argument discussing that point." (Emphasis added.) In order to be "restated," the text must appear elsewhere. The points relied on in an appellant's brief should be stated, one after another, after the statement of facts and before the argument portion of the brief. Each point relied on should then be restated at the beginning of the part of the argument related to that point.

"Violations of Rule 84.04 are grounds for a court to dismiss an appeal." *Shochet v. Allen,* 987 S.W.2d 516, 518 (Mo. App.1999). "Whether an appeal will be dismissed for failure to comply with Rule 84.04 is discretionary." *Bamber v. Dale Hunt Trucking,* 107 S.W.3d 489, 490 (Mo.App.2003), *quoting Hampton v. Davenport,* 86 S.W.3d 494, 496 (Mo.App. 2002). "That discretion is generally not exercised unless the deficiency impedes disposition on the merits. 'A brief impedes disposition on the merits where it is so deficient that it fails to give notice to [the court] and to the other parties as to the issue presented on appeal.'" *Keeney v. Missouri Hwy. & Transp. Com'n,* 70 S.W.3d 597, 598 n. 1 (Mo.App. 2002), *quoting Wilkerson v. Prelutsky,* 943 S.W.2d 643, 647 (Mo.banc 1997). *State v. McDaniel,* 236 S.W.3d 127, 132 (Mo.App.2007). This deficiency does not impede disposition of the appeal. It will be addressed on its merits.

In order for a person in custody of the department of corrections to receive DNA testing, he or she must file a motion alleging circumstances that, if substantiated, would demonstrate the person's innocence. § 547.035.1.[2] Section 547.035.2 provides:

The motion must allege facts under oath demonstrating that:

(1) There is evidence upon which DNA testing can be conducted; and

(2) The evidence was secured in relation to the crime; and

(3) The evidence was not previously tested by the movant because:

(a) The technology for the testing was not reasonably available to the movant at the time of the trial;

(b) Neither the movant nor his or her trial counsel was aware of the existence of the evidence at the time of trial; or

(c) The evidence was otherwise unavailable to both the movant and movant's trial counsel at the time of trial; and

(4) Identity was an issue in the trial; and

(5) A reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing.

Movant asserts four points on appeal. Points I, II, and III argue that the trial court erred in not finding that movant's motion complied with § 547.035.2. Point IV argues that the trial court erred in not holding that movant received ineffective assistance of trial counsel.

█ The same standards apply to appellate review of a judgment entered in a proceeding brought pursuant to § 547.035 as in other post-conviction proceedings. *Matney v. State,* 110 S.W.3d 872, 875 (Mo. App.2003); *Snowdell v. State,* 90 S.W.3d 512, 514 (Mo.App.2002).

[T]his Court is limited to a determination of whether the findings of fact and conclusions of law are clearly erroneous. *Rousan v. State,* 48 S.W.3d 576, 581 (Mo.banc 2001). Findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with the definite and firm impression that a mistake has been made. *State v. Ervin,* 835 S.W.2d 905, 928 (Mo.banc 1992).

*Matney, supra.*

█ This court first addresses Point IV. The exclusive procedure after trial for addressing a claim of ineffective assistance of counsel in a case in which a defendant was convicted of a felony is by means of a post-

**2.** References to statutes are to RSMo 2007 Cum.Supp. unless otherwise stated.

conviction motion file pursuant to Rule 29.15. *Schleeper v. State*, 982 S.W.2d 252, 254 (Mo.banc 1998), *cert. denied*, 527 U.S. 1026, 119 S.Ct. 2375, 144 L.Ed.2d 778 (1999); Rule 29.15(a). This is not a Rule 29.15 motion. Movant's claim of ineffective assistance of trial counsel is not cognizable in this proceeding. Point IV is denied.

■ Point I is directed to the requirement of § 547.035.2(2) that in order for DNA testing to be available, the evidence sought to be tested must have been "secured in relation to the crime." Point I asserts that the trial court erred in denying movant's motion because "[movant] has demonstrated that the evidence intended to be DNA tested was secured in relation to the crime. Hair evidence found in the sock cap was available at or before trial." The sock cap to which Point I refers is the cap found at the scene of the crime from which a hair sample was taken. A witness for the state testified at trial that the hair taken from the sock cap was consistent with movant's hair.

The trial court addressed the possibility that what movant sought with respect to DNA analysis of the hair sample that was recovered from the sock cap was a comparison with samples of other persons' hair; that other samples were not available at or before movant's trial; that, therefore, other samples would be "new evidence" that would not meet the requirements of § 547.035.2(2) for DNA testing. The trial court nevertheless observed that "[i]f the movant's request merely includes the testing of the hair sample that was concluded that he could not be eliminated

as a source of the hair by microscopic hair analysis, the movant will have technically met the requirement under § 547.035.2(2), RSMo."

As this court understands Point I, movant's request for DNA testing was directed only to the hair sample obtained at or prior to trial in order to ascertain whether movant could be excluded as the source of that sample. Under this circumstance, as the trial court held and movant asserts, the request for DNA testing complied with the requirement of § 547.035.2(2). Point I is moot in that the trial court concluded movant's request met the requirement of § 547.035.2(2).

■ Point II is directed to the requirement of § 547.035.2(3)(a) that imposes, as one factor for permitting DNA testing, that "[t]he technology for the testing was not reasonably available to the movant at the time of the trial."[3] The trial court concluded:

From the trial transcript and movant's own motion, DNA analysis was available to the movant and his trial counsel prior to the time of his trial. The SEMO Crime lab did not conduct DNA analysis on the hairs but there is nothing in the record that prevented trial counsel or movant from having an independent DNA examination of the hair samples as they existed at that time prior to trial. Because DNA analysis was available to the movant and the samples were made available to a different defense expert prior to trial, movant fails to meet § 547.035.2(3)(a), (b) and

---

**3.** In order for DNA testing to be available, in addition to the requirements of § 547.035.2(1) and (2), § 547.035.2(3) requires either (a) that the technology for DNA testing was not reasonably available to the movant at the time of trial, (b) that neither the

movant nor his or her trial counsel knew of the evidence at the time of trial that the movant now seeks to test, or (c) that the evidence now sought to be tested was "otherwise unavailable" to movant and his trial counsel at the time of movant's trial.

(c) to require a hearing to obtain DNA testing.

The trial court explained:

. . .

9. During cross examination, [Andy] Wagoner[4] tells defense counsel that the only way to [sic] you could exclude a hair sample coming from one person or another would be to perform DNA testing. Mr. Wagoner found only one hair that was complete for purpose of microscopic analysis that was identified as 1B2 from his lab report. The remaining hairs from the sock cap were hair "particles", a pubic hair, and a caucasian hair that did not match up to the known hair samples.

10. All the hair samples collected by the [sic] Mr. Wagoner were made available to a defense expert, Richard E. Bisbing, from McCrone Associates, Inc. who prepared a report dated November 18, 1994. The defense expert also concluded that one of the hair samples collected from the sock cap could have originated from movant supporting Mr. Wagoner's microscopic hair analysis.

(Internal references to exhibits and trial transcript pages omitted.)

The trial court's findings and conclusions are not clearly erroneous. Point II is denied.

■■■ Point III is directed to the trial court's finding relative to § 547.035.2(5) that requires in order for a request for DNA testing to be granted, "[a] reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing." Point III argues

that the trial court erred in denying movant's request for DNA testing because movant "allege[d] a reasonable probability exists that the outcome of trial would have been different if exculpatory result had been obtain[ed] through the requested DNA testing Sec. 547.035.2(5)."

The trial court's judgment includes an extensive recitation of evidence adduced at movant's trial. That recitation is followed by a lengthy statement of the trial court's rationale for concluding there was no reasonable probability that the outcome of movant's trial would have been different if the DNA test movant now seeks were performed and a determination made that the one hair that was removed from the sock cap, which was suitable for testing, were ascertained not to have come from movant. The trial court observed:

What [movant] wants this motion court to believe is that the results of the DNA testing would eliminate him as a suspect in this case if the one hair attributed to his hair type under microscopic examination turned out not to match him. This court feels that the sock cap was the weakest link in the trail of evidence given the hair could not be eliminated as originating from movant. It was not direct identification.

The strength of the state's case was the boot trail from one residence to the other, black male with red eyes and similar build to movant described by victim, victim being struck by a left handed person like movant, movant's admitted knowledge of striking individuals, finding of a damp black hooded sweatshirt and damp black boots matching print in trail in the movant's bedroom with him present and awake, movant

4. Mr. Wagoner testified for the state at movant's criminal trial. He was employed by the Southeast Missouri Regional Crime Laboratory. He was a firearms and tool marks examiner and forensic scientist. He had also received training in trace evidence from the FBI and the Midwest Association of Forensic Scientists.

indicating he had been smoking marijuana that causes red eyes, movant's inconsistent statement between what he told officers and his trial testimony and the lack of individuals who could have supported his alibi that were not called at trial but definitely available to the movant but likely were unsupportive of his story at that time. [Josephine Hudson, Percy Baker, and Delores Mejia].

The trial court concluded that the movant's petition for DNA testing did not establish that " 'reasonable probability exists that he would not have been convicted if exculpatory results had been obtained' through the DNA testing as required by § 547.035.2(5)." The trial court held, "The circumstantial evidence combined with his own admissions would lead a jury to [a] similar conclusion with or without the one hair from the sock cap. 'In other words, it is not the "silver bullet" needed' for the movant to be provided relief under § 547.035, RSMo."

The trial court's findings and conclusions are not clearly erroneous. Point III is denied. The judgment is affirmed.

LYNCH, C.J., and RAHMEYER, J., concur.